# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL FORREST, | : | Civil No. 3:17-CV-1777 |
| Plaintiff, | : | |
| v. | : | |
| JOHN WETZEL, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is Forrest's motion for a temporary restraining order, filed December 7, 2018, seeking his release from solitary confinement, immediate treatment for his Hepatitis C, the Pennsylvania Department of Corrections' ("DOC") compliance with a prior federal court order mandating specific medical and neurological treatment for his lumbar spine and seizure issues. (Doc. 20.) Due to Forrest's institutional transfer and his receipt of Hepatitis C treatment at his current facility, and finding no binding language in his prior actions with respect to his current medical care, the court will deny his request for injunctive relief.

### BACKGROUND

Plaintiff Michael Forrest is a state inmate currently housed at the State Correctional Institution at Coal Township ("SCI-Coal Township"), Coal Township, Pennsylvania. He filed this action in October 2017, pursuant to 42 U.S.C. § 1983.

Named as defendants are various Commonwealth[1] employees and Correct Care Solutions employees,[2] the facility's contract medical care provider. In his amended complaint, Forrest alleges his prolonged placement in solitary confinement by the Commonwealth Defendants violates his Eighth Amendment rights. He also claims both the Commonwealth and Medical Defendants were deliberately indifferent to his various medical needs, including his Hepatitis C, while housed in solitary confinement. (Doc. 9.)

While there are several pending motions in this case, this order addresses only Forrest's motion for a temporary restraining order. (Doc. 20.) Forrest seeks immediate treatment for his Hepatitis C, release from solitary confinement, and the Defendants' compliance with respect to specific medical care he asserts that he is required to receive pursuant to a prior federal court order.[3] (*Id.*) Forrest has filed a declaration and brief in support of his motion. (Docs. 21 – 22.) The Commonwealth and Medical Defendants oppose the motion noting that Forrest was receiving treatment for his Hepatitis C condition and was not in solitary confinement at the time they filed their responses. Additionally, Defendants argue that the federal cases

---

[1] The Commonwealth Defendants are: Secretary Wetzel; Superintendent Theresa Delbalso, Eastern Regional Deputy B. Mason; Corrections Facility Maintenance Manager (CFMM) Richard Roller; Director of the Bureau of Healthcare Services, Christopher Cappman; and SCI-Mahanoy. *See* Doc. 64.

[2] The Medical Defendants are: Carl J. Keldie, M.D.; Shaista Khanum, M.D., and CCS.

[3] Forrest references *Forrest v. Nedab*, 2:97-cv-4442 (E.D. Pa.) and *Forrest v. Varner*, 2:99-cv-1465 (W.D. Pa.). *See* Docs. 75, 78, 79, 81 and 82.

cited by Forrest did not grant him any prospective relief with respect to his medical care and that none of the Medical Defendants were a party to the actions. Based on this information, Defendants argue that Forrest's lack of irreparable harm precludes the grant of the extraordinary relief he requests. (Docs. 76 – 77.)

Forrest has filed multiple reply briefs. (Docs. 75, 78, 79, 81 – 82.) Forrest does not deny the receipt of Hepatitis C treatment; however, he continues to take issue with his present treatment for his degenerative lumbar spine and seizures. He argues it is inconsistent with the treatment previously recommended in his earlier federal case by a physician from the Einstein Medical Center in Philadelphia. The motion is ripe for disposition. On March 25, 2020, this matter was reassigned to the undersigned.

## STANDARD OF REVIEW

A preliminary injunction maintains the *status quo* pending a final decision on the merits, whereas a "mandatory injunction" alters the status quo by granting injunctive relief before trial, and as such is appropriate only in extraordinary circumstances. *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) ("A party seeking mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity.") Mandatory injunctions should be used sparingly. *United States v. Price*, 688 F.2d 204, 212 (3d Cir. 1982). A request for some form of mandatory proactive injunctive relief

in the prison context "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper,* 60 F.3d 518 (3d Cir. 1995).

The standard for a temporary restraining order is the same as for a preliminary injunction. In order to obtain a preliminary injunction or temporary restraining order, the requesting party must show: (1) a reasonable likelihood of success on the merits; (2) irreparable injury if the requested relief is not granted; (3) the granting of preliminary injunction will not result in greater harm to the non-moving party; and (4) the public interest weighs in favor of granting the injunction. *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019) (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)). If the first two "gateway factors" are satisfied, "a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested relief." *Reilly*, 858 F.3d at 179. If a party cannot establish both a likelihood of success on the merits and a probability of irreparable harm, the issuance of a preliminary injunction is inappropriate. (*Id.*)

Finally, a party is not entitled to a preliminary injunction or temporary restraining order unless there is "a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Ball v. Famiglio*, 396 F. App'x 836, 837 (3d Cir. 2010); *see also Moneyham v. Ebbert*, 723 F. App'x 89,

4

93 (3d Cir. 2018) ("District Court was correct to deny [ ] requested injunction because it involved allegations unrelated to the complaint.")

## DISCUSSION

### A. Motion Denied Because of Forrest's Transfer to SCI-Coal Township and Request for Injunctive Relief Against Non-Parties

An inmate's transfer or release from the facility complained of generally moots all but his damages claims. *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003). Additionally, "[a] non-party cannot be bound by the terms of an injunction unless the non-party is found to be acting 'in concert or participation' with the party against whom injunctive relief is sought. Fed. R. Civ. P. 65(d)." *Elliott v. Kiesewetter*, 98 F.3d 47, 56 (3d Cir. 1996).

Here, the allegations of Forrest's amended complaint concern events that took place at SCI-Mahanoy. However, Forrest filed his request for injunctive relief while housed at SCI-Coal Township.[4] In this case, all the Defendants (except for Secretary Wetzel, Deputy Mason, and Christopher Cappman) are employed at SCI-Mahanoy, not SCI-Coal Township. To the extent Forrest seeks to enjoin the medical professionals at SCI-Coal Township with respect to his Hepatitis C treatment, denial of "mandated" medical care, and housing, he cannot do so via this action. No SCI-Coal Township employee or contract medical

---

[4] The DOC transferred Forrest to SCI-Coal Township on September 20, 2018. (Doc. 22 at ¶ 4.) The instant motion for temporary restraining order was filed on December 7, 2018. (Doc. 20.)

professional are named as defendants in this action. Furthermore, Forrest does not suggest that the medical professionals or corrections officials at SCI-Coal Township acted in concert or participation with the Defendants in this action with respect to his Hepatitis C treatment, disregarding the "federal mandate" or his housing. Accordingly, the Court will deny Forrest's motion for injunctive relief.

> **B. Motion Denied Because There Is No Likelihood of Success on the Merits of the Deliberate Indifference to Serious Medical Needs Claim and No Potential of Irreparable Harm**

To state a claim for deliberate indifference to serious medical needs, a plaintiff "must make (1) a subjective showing that the defendants were deliberately indifferent to [his or her] medical needs and (2) an objective showing that those needs were serious." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (alteration in original) (internal quotations and citations omitted). A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). A medical need is "serious" if "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr.*

*Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation omitted).

"[T]he deliberate indifference standard affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients," and courts must "disavow any attempt to second-guess the propriety or adequacy of [their] particular course of treatment so long as it remains a question of sound professional judgment." *Pearson*, 850 F.3d at 538 (internal citation and quotation marks omitted). A claim that a doctor or medical department was negligent does not rise to the level of an Eighth Amendment violation simply because the patient is a prisoner. *See Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Where "a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993)). Likewise, a prisoner's disagreement with the medical staff's professional judgment, or a difference of medical opinion between two physicians, does not state an Eighth Amendment claim. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).

Forrest alleges that after his enzyme levels exceeded 40, and a physician's assistant and nurse recommended him for treatment, his request for treatment for

7

his Hepatitis C condition was denied by a non-party physician at SCI-Coal Township. (Doc. 20 at 2.) The Commonwealth Defendants offer the Declaration of Corrections Health Care Administrator Karen Merritt-Scully who states that Forrest was approved for treatment for Hepatitis C on March 2, 2019. (Doc. 76-1 at ¶ 3.) His treatment commenced on April 22, 2019, and was expected to conclude in July 2019. (*Id*. at ¶¶ 4-5.) Medical records submitted by the Medical Defendants confirm this information. *See* Doc. 77-1. Moreover, the delay in commencement of his Hepatitis C treatment from February 2019 to April 2019 was due to the need to taper Forrest off his seizure medications and switch him to an alternative medication that was safe for him to use while undergoing Hepatitis C therapy. (*Id*. at ¶ 10.) Forrest's May 21, 2019 bloodwork results were normal. (*Id*. at ¶ 1.)

    Forrest's allegation that his Hepatitis C treatment did not commence when he thought it should does not suggest that his March 2, 2019 approval for treatment demonstrated the Defendants' deliberate indifference to his serious needs. At best, he alleges a mere disagreement with the physician's treatment decisions (i.e., choice of prescribed medication and when his treatment should commence) or malpractice, but not an Eighth Amendment violation. Thus, he cannot make the requisite showing of likelihood of success on the merits based on the preliminary injunction record.

8

Moreover, as he does not dispute his receipt of treatment for his Hepatitis C, he cannot demonstrate a potential of irreparable harm, the second threshold factor necessary to obtain a preliminary injunction. *Reilly*, 858 F.3d at 179. As he cannot satisfy the standard for a preliminary injunction on this issue, he is not entitled to the requested relief at this time. *See Moneyham v. Ebbert*, 723 F. App'x 89, 92 (3d Cir. 2018) (per curiam) (affirming district court denial of request to order prison to provide dental treatment when plaintiff could not establish likelihood of success on the merits of deliberate indifference claim).

### C. Motion Denied With Respect to Extended Solitary Confinement

Forrest claims that he was held in "solitary confinement from January 15, 2009, to December 4, 2018" in retaliation for "his disability". (Doc. 20 at ¶ 3.) He claims that his conditions of confinement in solitary confinement resulted in a violation of his Eighth Amendment rights. (Doc. 22 at ¶¶ 8 – 9.) To the extent Forrest seeks injunctive relief to release him from solitary confinement, the court will deny the motion as moot based on his transfer. Additionally, the court will not consider enjoining the DOC from ever placing Forrest in segregated housing as a preliminary injunction is not a vehicle to be used "simply to eliminate the possibility of a remote future injury." *Holiday Inns of Am., Inc. v. B&B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969). "Confinement of inmates in isolation units is hardly unusual …. *Cf. Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002) ('[D]isciplinary

detention and administrative segregation [are] the sort[s] of confinement that inmates should reasonably anticipate receiving at some point in their incarceration. …')." *Parkell v. Danberg*, 833 F.3d 313, 333 (3d Cir. 2016).  "Establishing a risk of irreparable harm is not enough." *ECRI*, 809 F.2d at 226.  Shortly after his arrival at SCI-Coal Township prison officials released him from administrative custody.  They are the same officials, not the Defendants, who will decide whether his behavior or prison administrative requirements warrant a return to solitary confinement.

Based on the above, the court will deny Forrest's request for injunctive relief against the Defendants based on his past or possible future placement in solitary confinement.

### D. Motion Denied With respect to Defendants' Alleged Failure to Comply with Federal Mandate

Forrest explains that the United States District Court for the Eastern District of Pennsylvania bifurcated the claims raised in *Forrest v. Horn,* No. 2:97-cv-4442 (E.D. Pa.),[5] and transferred those claims arising in the Western District of

---

[5] The Court takes judicial notice of the online docket in this case available at https://ecf.paed.uscourts.gov (search Forrest, Michael; last visited May 19, 2020).  Forrest refers to this case as *Forrest v. Nedab*.  However, the parties stipulated to the dismissal of Mr. Nedab prior to trial.  At trial, a jury awarded Forrest a monetary judgment against three SCI-Graterford corrections officers.  The trial court entered judgement in favor of other DOC employees and against Forrest.  There is no commonality of defendants between this action and the present case.  No further relief was granted.

Pennsylvania to that district court which docketed the matter as *Forrest v. Varner*, No. 2:99-cv-1465 (W.D. Pa.).[6] *See* Doc. 20 at ¶ 2 and Doc. 22 at ¶ 7. He alleges that in *Horn*, the Court issued a mandate adopting the recommendations of his expert witnesses, Drs. Farbar and Newman, who prescribed medication and specific treatment for his neuropathy and grand mal seizures. (Doc. 21 at ¶ 5.) In the second case, *Varner*, Forrest states the court granted the defendants' summary judgment motion. (Doc. 101.) He also claims Judge Caputo when presiding over the *Varner* case in the Western District "recommend[ed] to the PA DOC and Board of Probation and Parole [that he] be released to receive medical and disability treatment not provided by the PA DOC and their medical contractors." (Doc. 22 at 5.)

There is no record that Judge Caputo was involved in Forrest's Western District of Pennsylvania case. *See* Doc. 72 at 5 n.4. There is also no record of Judge Caputo ever directing or recommending the DOC or the Pennsylvania Board of Probation and Parole to release Forrest. (*Id.*) Additionally, a review of the docket in both cases reveals that neither case resulted in permanent orders of injunctive relief with respect to Forrest's medical care. Finally, none of the

---

[6] The Court takes judicial notice of the online docket in this case available at https://ecf.paed.uscourts.gov (search Forrest, Michael; last visited May 19, 2020). Again, although Forrest sued several DOC employees in the Western District of Pennsylvania, none of the named defendants are named in his present action. In June 2003, the Court granted the defendants' motion for summary judgment. No consent decrees or orders of injunctive relief were issued in the matter.

Defendants in this action were parties to the other cases.  Without evidence of a "federal mandate," Forrest also fails to demonstrate any imminent harm due to Defendants' failure to comply with the non-existent mandate.

Because Forrest has failed to demonstrate any likelihood of success on the merits or potential of irreparable harm based on the Defendants alleged failure to conform to a non-existent "federal mandate" concerning specific medication and treatment, he is not entitled to injunctive relief as to this claim.

## CONCLUSION

For the foregoing reasons, the court will deny Forrest's motion for a temporary restraining order.  An appropriate order will follow.

s/ Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated:  May 19, 2020