**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL FORREST, | : | Civil No. 3:17-cv-01777 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN WETZEL, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**MEMORANDUM**

Before the court are cross-motions for summary judgment, and Plaintiff's

motion for a protective order.  Plaintiff brings claims under 42 U.S.C. § 1983

based on his medical treatment and housing while he was incarcerated at the State

Correctional Institute Mahanoy, in Frackville, Pennsylvania ("SCI-Mahanoy").

Plaintiff alleges that he required medical equipment to ambulate safely in the

institution's general population and he was denied this equipment.  Since he was

denied this equipment, he refused to be placed in the general population.  Since he

refused to be placed in the general population, Plaintiff was placed in the restricted

housing unit ("RHU"), which he amounts to solitary confinement.  He also alleges

that he was denied proper treatment for his other medical impairments, including

Hepatitis C.  The court has reviewed the evidence submitted by the parties and

their briefing.  While the court understands the frustration Plaintiff experienced

due to his continued detainment in the RHU for what he felt was a punishment for

1

being disabled, he has failed to present evidence to establish that Defendants

violated his constitutional rights.  Furthermore, he repeatedly refused treatment and

refused to be placed in general population.  Therefore, the damages he alleges were

the result of his own refusals rather than the result of Defendants' actions.

Therefore, the court will deny Plaintiff's motion for summary judgment and grant

Defendants' motions for summary judgment.  Additionally, the court will deny

Plaintiff's motion for protective order as it is concerned with his current housing at

SCI-Coal Township, which is not at issue before the court.

## PROCEDURAL BACKGROUND

Plaintiff, an inmate previously housed at SCI-Mahanoy,[1] initiated this action

in October of 2017 and is proceeding *in form pauperis*.  (Docs. 1, 16.)  Plaintiff

filed an amended complaint in November of 2017.  (Doc. 9.)  The amended

complaint names eight defendants:  (1) John Wetzel, Secretary of the Pennsylvania

Department of Corrections ("Wetzel");  (2) Theresa Delbalso, Superintendent of

SCI-Mahanoy ("Delbalso");  (3) Deputy Mason, Deputy of Regional Eastern

District of Pennsylvania Department of Corrections ("Mason"); (4) Richard D.

Roller,[2] Corrections Facility Maintenance Unit Manager at SCI-Mahanoy

---

[1] Plaintiff is currently housed at the State Correctional Institute at Coal Township, Pennsylvania.

[2] In his responsive briefing, Plaintiff argues that he never named "Roller" as a defendant and argues that "Silvas" was named as a defendant before the case was transferred to the undersigned judicial officer.  (Doc. 353, p. 15.)  Plaintiff's amended complaint clearly sets forth the eight defendants named above.  He identifies Defendant Roller as "Richard D. Holle", but also

("Roller"); (5) Christopher Oppman,[3] Director of Bureau of Healthcare Services at Pennsylvania Department of Corrections ("Oppman"); (6) Carl Keldie, Chief Medical Officer of Correct Care Solutions ("Keldie"); (7) Correct Care Solutions, Corporate Medical Health Care Provider ("CCS"); and (8) Shaista Khanum,[4] Clinical Physician Employed at SCI-Mahanoy ("Khanum").  (Doc. 9, pp. 2–4.)[5] Despite not being a named defendant in the amended complaint, SCI-Mahanoy was served with the amended complaint and is represented by counsel.  (Docs. 30, 40.)

In the amended complaint, Plaintiff brings First, Fourth, Eighth and Fourteenth Amendment claims.  (Doc. 9, ¶¶ 30–33.)  Additionally, Plaintiff raises a claim under the Universal Declaration of Human Rights, Article Five, Covenant Against Torture.  (*Id*., ¶ 31.)

On May 21, 2020, Plaintiff was granted leave to file a supplement to his amended complaint for the limited purpose of raising a First Amendment

---

provides his title as Corrections Facility Maintenance Unit Manager at SCI-Mahanoy.  (Doc. 9.)  Richard Roller was the Corrections Facility Maintenance Unit Manager at SCI-Mahanoy through May 2018.  (Doc. 254-4, p. 3.)  Therefore, he is a named defendant in Plaintiff's amended complaint.  A Joseph Sliva was named as a defendant in Plaintiff's supplemental complaint.  (Doc. 258.)  However, that pleading was stricken from the record.  (Doc. 392.)  Therefore, Joseph Sliva is not a defendant in this case.

[3] Plaintiff misspelled this Defendant's surname as "Cappman."

[4] Defense counsel for the contract medical care provider and its employees, has identified "Dr. K" as Dr. Shaista Khanum.

[5] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

retaliation claim against Defendants.  (Doc. 247.)  Plaintiff filed a pleading that far exceeded this limited purpose by naming an additional ten defendants and raising claims previously excluded by the court.  (Doc. 258.)  On April 22, 2021, the court entered an order striking the supplemental complaint from the record.  (Doc. 392.)

Plaintiff has filed a motion for summary judgment and brief in support. (Docs. 403, 435.)  Likewise, Defendants have filed motions for summary judgment and briefs in support.  (Docs. 521, 523, 525, 532.)  The parties have had an opportunity to respond and reply and the cross-motions are ripe to be addressed by this court.

## JURISDICTION AND VENUE

The court has federal question jurisdiction over the complaint as it asserts claims under 42 U.S.C. § 1983.  *See* 28 U.S.C. § 1331. Venue is appropriate because all actions detailed in the amended complaint occurred within the Middle District of Pennsylvania.  28 U.S.C. § 1391(b)(2).

## STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is

not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or

denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### A. Facts Material to Plaintiff's Claims[6]

#### 1. Plaintiff

Plaintiff was transferred to SCI-Mahanoy as a permanent transfer on September 15, 2015.  (Doc. 526, ¶ 2.)  He was 56 years old and his conditions included seizures, right leg paralysis, blindness in left eye, and questionable/possible glaucoma.  (*Id.*)  On September 18, 2015, Plaintiff requested his back and leg braces from Albert Einstein Medical Center and reported that he required name brand prescriptions for his epilepsy.  (Doc. 525-2, p. 229.)  The chart notes state that Plaintiff's past medical records were reviewed and there were conflicting motor and sensory exams and indications of possible manipulation and malingering.  (*Id.*, pp. 226–27.)

While at the Albert Einstein Healthcare Network in February of 2007, Plaintiff needed a back brace, a right leg brace, and crutches.  (Doc. 403-9, p. 3.)  However, in subsequent physician's orders while in state custody, it is noted that he requires a wheelchair for long distances, but no braces or crutches are mentioned.  (Doc. 403-3, pp. 19, 23 & Doc. 403-5, p. 52.)

---

[6] In accordance with the court's Local Rules, Defendants have filed their respective statements of material facts.  (Docs. 522, 526.)  Plaintiff included a statement of alleged facts in his brief in support of his motion for summary judgment.  (Doc. 535.)  From those statements, and the evidence submitted by the parties, the court has culled the facts in this matter and has set forth those facts in this section.

Upon transfer to SCI-Mahanoy, Plaintiff was referred to chronic clinic and assigned to the RHU.  (Doc. 526, ¶ 2.)  Plaintiff was initially seen by Physician Assistant Jennifer Porta in the RHU on September 18, 2015.  (*Id*., ¶ 3.)  He provided her with is medical history and she planned on requesting his medical records from the Albert Einstein Medical Center.  (*Id*.)  While at SCI-Mahanoy, Plaintiff was offered treatment for his back pain, epilepsy, and other complaints.  (Doc. 525-2, pp. 1–229.)  Plaintiff repeatedly refused treatment from the medical providers while at SCI-Mahanoy.  (*Id*., pp. 168, 185–86, 218–19, 221, 223.)  He also failed to attend clinic.  (*Id*., p. 221.)  Specifically, Plaintiff refused treatment for Hepatitis C.  (*Id*., p. 185.)

Plaintiff states that he cannot walk or take care of himself in the general population.  (Doc. 524-1, pp. 10–11.)  He refuses to be placed in general population.  (*Id*., p. 10.)  He was written up for refusing to follow orders. (*Id*., p. 10; Doc. 535-1, pp. 7–19.)    He views the time in his handicapped cell as solitary confinement because of the restrictions and limitations involved.  (Doc. 524-1, p. 10.)

### 2.  John Wetzel

Defendant Wetzel is the Secretary of the Department of Corrections. Defendant Wetzel has not diagnosed or medically treated Plaintiff.  (Doc. 524-1, p. 10.)  In his deposition, Plaintiff stated that he had written letters from Defendant

Wetzel regarding his medical treatment.  (*Id.*, p. 14.)  Plaintiff provided multiple

grievance appeals addressed to Defendant Wetzel.  (Docs. 208-7, 208-8.)

### 3.  Theresa DelBalso

In his deposition, Plaintiff stated that Defendant DelBalso "denied all of my

appeals knowing that I required treatment."  (Doc. 524-1, p 15.)  He stated that she

could see his mistreatment on the cameras, she answered the grievances, gave him

the misconducts, and refused him placement in general population.  (*Id*.)  He

asserts that Defendant DelBalso "has a vote or something.  In other words not her

on her own, but all those officials that I'm suing them in the lawsuit, including

DelBalso, are in positions of regulation and process, so she had to know what was

going on with me and failed to act with deliberate indifference with my medical

care and treatment, and also long-term solitary confinement."  (Doc. 524-1, p. 15.)

Plaintiff provided multiple grievance appeals addressed to Defendant DelBalso and

grievance decisions signed by Defendant Delbalso.  (Docs. 208-7, 208-8.)  He also

stated that Defendant DelBalso would go to all the other cells when making her

rounds, but she would not come to his cell.  (Doc. 524-1, p. 15.)

Defendant DelBalso has not medically diagnosed or treated Plaintiff.  (*Id*.)

### 4.  Richard D. Roller

As noted above, there is some inconsistency regarding the identity of

Defendant Roller.  In his amended complaint, Plaintiff names "Richard D. Holle"

as a defendant and provides his title as Corrections Facility Maintenance Unit Manager at SCI-Mahanoy.  (Doc. 9.)  Richard Roller was the Corrections Facility Maintenance Unit Manager at SCI-Mahanoy through May 2018.  (Doc. 254-4, p. 3.)  In his deposition, Plaintiff referred to this Defendant as Holle, but considering Richard Roller was the Corrections Facility Maintenance Unit Manager at SCI-Mahanoy, this is the party identified in the suit.

In his deposition, Plaintiff stated that "Holle" never came to see him.  (Doc. 524-1, p. 16.)  Plaintiff confirmed that Defendant Roller has never medically diagnosed or treated him.  (*Id*., p. 17.)

### 5. Defendant Oppman

Plaintiff stated in his deposition that he had letters from Defendant Oppman regarding records from the prison where Plaintiff was housed before SCI-Mahanoy.  (Doc. 524-1, pp. 8, 14.)  Plaintiff confirmed that he has never met Defendant Oppman personally.  (*Id*., p. 15.)  Defendant Oppman states he is not aware of Plaintiff or his claims.  (Doc. 524-3, p. 3.)  Plaintiff confirms that Defendant Oppman has never medically diagnosed or treated him.  (Doc. 524-1, p. 17.)

### 6. Defendant Mason

Plaintiff asserts that Defendant Mason's name was on several documents he received.  (Doc. 524-1, p. 16.)  Defendant Mason stated that she was part of the

PRC Program Review Committee, but did not answer misconduct appeals.  (Doc. 524-6, p. 3.)  Plaintiff stated that when Defendant Mason does her rounds, she walks past his cell and does not stop.  (Doc. 524-1, p. 16.)  Defendant Mason has never medically diagnosed or treated Plaintiff.  (*Id*., p. 17.)

### 7.  Carl J. Keldie, M.D.

Defendant Keldie is the Chief Clinical Officer for Wellpath, LLC.  (Doc. 525-5, p. 1.)  He has never treated Plaintiff.  (*Id*.)

### 8.  Shaista Khanum, M.D.

Defendant Khanum was a physician at SCI-Mahanoy until March 17, 2018.  (Doc. 525-7, p. 7.)  She treated Plaintiff in 2017.  (Doc. 524-2, pp. 175–90.)  However, the medical records reflect that Plaintiff sometimes refused treatment form Defendant Khanum.  (*Id*., pp. 186–87, 190.)

### B.  Claims Against SCI-Mahanoy Will be Dismissed

As stated above, SCI-Mahanoy was not a named defendant in the amended complaint.  (Doc. 9.)  However, the facility was served, and an attorney entered an appearance on its behalf.  (Docs. 30, 40.)  To the extent that the complaint can be liberally construed as raising claims against the facility for the deprivation of Plaintiff's constitutional rights under 42 U.S.C. § 1983, those claims will be dismissed.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that misconduct was committed by a *person* acting under color of state law; and that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added). It is well-settled that neither a state nor its agencies are considered to be a "person" as that term is defined under § 1983 and, therefore, they are not subject to a § 1983 suit. *Hafer v. Melo*, 502 U.S. 21, 25–27 (1997). Similarly, neither a prison nor a department within a prison are "persons" subject to suit under § 1983. *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973); *Edwards v. Northampton County*, 663 Fed. Appx. 132, 136 (3d Cir. 2016) (extending *Fischer* to include county prisons).

Therefore, to the extent that Plaintiff raised constitutional claims against SCI-Mahanoy in his amended complaint, those claims will be dismissed.

### C. Defendants Will be Granted Judgment on Plaintiff's Fourth Amendment Claims

Plaintiff alleges that Defendants violated his Fourth Amendment rights. (Doc. 9, ¶ 32.) The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. An inmate has some constitutional protection under the Fourth Amendment, but an inmate's rights are limited by the need to maintain prison security. *Bistrian v. Levi*, 696 F.3d 352, 373 (3d. Cir. 2012); *see also Bell v.*

12

*Wolfish*, 441 U.S. 441, 558–60 (1979).  Rather, the Fourth Amendment's application to prison settings has been narrowly constrained to issues regarding bodily integrity.  *Parkell v. Danberg*, 833 F.3d 313, 325 (3d Cir. 2016) ("We conclude that a right to privacy in one's own body, unlike a right to maintain private spaces for possessions, is not fundamentally inconsistent with imprisonment and is so fundamental that society would recognize it as reasonable even in the prison context.").

Here, Plaintiff failed to allege any bodily searches in his complaint and failed to present any evidence in furtherance of a Fourth Amendment claim. Therefore, the Defendants' motions for summary judgment will be granted in regards to any alleged Fourth Amendment violations.

### D. Defendants Will be Granted Judgment on Plaintiff's First Amendment Claims

Plaintiff's amended complaint references "censorship" by defendants and "deliberate indifference towards medical treatment, care and appropriate placement for historically disabled paraplegic-epileptic" plaintiff as violations of his First Amendment Rights.  (Doc. 9, ¶ 32.)

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const.

amend I.  Despite generally alleging censorship, there is no factual allegation in the amended complaint that implicates a First Amendment violation of free speech.

The complaint also made a generic allegation of retaliation.  (Doc. 9, ¶ 32.)  A prisoner asserting a retaliation claim must allege the following elements: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).  The filing of a lawsuit or a prison grievance constitutes protected activity under the First Amendment.  *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015).

DOC Defendants have presented evidence in the form of Plaintiff's own testimony that the misconducts filed against him were the results of his own refusals to join the general population.  (Doc. 524-1, p. 10.)  Likewise, Medical Defendants have presented evidence that Plaintiff repeatedly refused treatment.  (Doc. 525-2, pp. 168, 185–86, 218–19, 221, 223.)  Plaintiff has failed to counter Defendants' evidence with any evidence supporting retaliatory conduct on the part of Defendants in regards to his confinement to the RHU or the level of medical care he received.  As such, the court will grant Defendants' motions for summary judgment with respect to any First Amendment claims.

Following the amended complaint, the court granted leave for Plaintiff to file a supplemental complaint raising a First Amendment retaliation claim based on his transfer from SCI-Mahanoy to SCI-Coal Township.  (Doc. 247.)  However, because Plaintiff failed to limit his pleading to the issue of the transfer, the pleading was struck from the record.  (Doc. 392.)  Therefore, there is no First Amendment retaliation claim regarding his transfer to SCI-Coal Township before the court.

### E.  Defendants Will be Granted Judgment on Plaintiff's Claim Under the Universal Doctrine of Human Rights

Plaintiff brings a claim against Defendants arising from a violation of the Universal Declaration of Human Rights, Article Five, Covenant Against Torture, arising from his solitary confinement in the RHU.  (Doc. 9, ¶ 31.)  However, Plaintiff cannot successfully bring a claim under the Universal Doctrine of Human Rights.  *See U.S. v. Chatman*, 351 Fed.App'x 740, 741 (3d Cir. 2009); *Sosa v. Alvarez–Machain,* 542 U.S. 692 (2004) (explaining that Universal Declaration is simply a statement of principles and not a treaty or international agreement that would impose legal obligations.).  Therefore, Defendants' motion for summary judgment will be granted as to these claims.

### F. Defendants Will be Granted Judgment on Plaintiff's Remaining Claims Against the DOC Defendants

Defendants Wetzel, DelBalso, Mason, Roller, and Oppman, are all employees of the DOC.  (Doc. 9, ¶¶ 4–8.)  Reading the complaint liberally, Plaintiff raises two remaining claims against these defendants: (1) his solitary confinement in the RHU that allegedly violates the Fourteenth and Eighth Amendments, Doc. 9, ¶ 30–31; and (2) the Commonwealth of Pennsylvania's "treatment protocol, policy, provision, procedure and practice presents deliberate indifference to the known risks from untreated chronic hepatitis-c," that allegedly violates the Eighth Amendment.  (Doc. 9, ¶ 33.)

#### 1. Eighth Amendment Claims

The crux of Plaintiff's Eighth Amendment deliberate medical indifference and cruel and unusual punishment claims against the DOC Defendants is that they were isolating him in solitary confinement because he is disabled.  (Doc. 524-1, pp. 10–11.)  He states that without medical equipment to assist with ambulation, he cannot function in the general population.  (*Id.*)  This equipment includes braces and crutches.  (*Id.*, p. 6.)  He has refused to be placed in the general population because he does not have this medical equipment and has been written up for "misconducts" for such refusals and placed in the RHU.  (*Id.*, pp. 10–11.)  Plaintiff states that he is deprived of fresh air, sunlight, and making calls, and all his meals

are delivered to him.  (*Id*.)  At the time of the deposition, Plaintiff reported that he still did not have his braces.  (*Id*., p. 17.)

Here, the alleged underlying conduct Plaintiff challenges is two-fold:  (1) he challenges the refusal to give him the medical equipment he feels is necessary for safe ambulation in the general population; and (2) he challenges the repeated misconducts he is given for his refusal to be placed in general population.  It appears that Plaintiff was stuck in a frustrating cycle of events: not having the equipment he feels is necessary to safely ambulate in the general population, then refusing to enter general population, and then being penalized for this refusal, with the process repeating itself once he is again asked to enter the general population.

However, Plaintiff has failed to bring his suit against the proper persons. The DOC Defendants that Plaintiff names are in supervisory roles.  Plaintiff has failed to present evidence that these individuals either refused to give him the equipment he feels he needed for safe ambulation or wrote him misconducts for refusing to enter the general population.

"[An individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of [respondent] superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and

acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)).

Defendants Cappman, Holle, and Mason have all presented evidence that they do not know about Plaintiff's situation and were not involved with decision-making regarding his placement.  (Docs. 524-3, pp. 3–4; 524-4, pp. 2–11; 524-6, pp. 2–3, 7.)  Plaintiff has been unable to rebut this evidence.  Plaintiff states in his deposition that there are letters and documents with Defendants' names on them.  But Plaintiff only produced evidence concerning Defendant Mason.  He produced a letter dated July 23, 2018 regarding his medical concerns at SCI-Mahanoy, and this letter was copied to Defendants DelBalso and Mason.  (Doc. 208-7, p.2.)  But, after the fact knowledge is not considered actual knowledge.  *Rode*, 845 F.2d at 1208.

Similarly, Plaintiff has provided multiple grievance appeals addressed to Defendant DelBalso and grievance decisions signed by Defendant Delbalso.  (Docs. 208-7, 208-8.)  Some of the grievance appeals were also addressed to Defendant Wetzel.  (Docs. 208-7, 208-8.)   Defendants' involvement with Plaintiff's grievances, is not sufficient to establish personal involvement.  "Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement."  *Rode*, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal

involvement); *see also Brooks v. Beard*, No. 05-3196, 2006 WL 332547, 167 F. App'x 923, 925 (3d Cir. Feb. 14, 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).

Therefore, the court cannot analyze whether the withholding of the medical equipment or the repeated placements in the RHU for refusing to enter the general population violate the Eighth Amendment because Plaintiff has failed to provide evidence that the DOC Defendants named in this suit were personally involved in committing the alleged constitutional violations resulting from the lack of medical equipment and repeated placement in RHU.

Additionally, Plaintiff alleges an Eighth Amendment violation premised on the allegation that the Commonwealth of Pennsylvania's "treatment protocol, policy, provision, procedure and practice presents deliberate indifference to the known risks from untreated chronic hepatitis-c." (Doc. 9, ¶ 33.)  However, Plaintiff has failed to identify any policy or provision in his briefing.  (Docs. 403, 535.)  Likewise, he has failed to present any evidence that the Commonwealth's has a standing protocol, policy, provision, procedure, or practice regarding Hepatitis-C in his briefing.  (*Id*.)  Attached to Plaintiff's amended complaint was a letter referencing a class action in *Chimenti v. Pennsylvania Department of*

*Corrections,* No. 2:15-cv-03333-JP (E.D. Pa.).  Doc. 9, p. 20.  This letter implies

that there was a policy that a number of inmates were challenging, but Plaintiff

failed to present additional evidence in subsequent briefing to show how any

policy violated his Eighth Amendment rights.  (Docs. 403, 535.)  As such,

summary judgment as to the Eighth Amendment claims will be granted in favor of

the DOC Defendants.

## 2.   Fourteenth Amendment Claims

Plaintiff also brings claims against the DOC Defendants under the

Fourteenth Amendment.  (Doc. 9, ¶ 32.)  The Fourteenth Amendment provides that

a state shall not "deprive any person of life, liberty, or property, without due

process of law."  *See* U.S. Const. amend. XIV.  "A liberty interest may arise from

the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it

may arise from an expectation or interest created by state laws or policies."

*Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)).  In order "[t]o establish [a state-

created liberty interest under the Fourteenth Amendment] in the conditions of

confinement context, courts generally require a showing that the alleged liberty

interest is substantial[.]"  *See Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431,

438 (3d Cir. 2020) (quoting *Williams v. Secretary Pennsylvania Dep't of Corr.,*

848 F.3d 549, 559 (3d Cir. 2017) (some alterations in original).  That is, "the right

alleged must confer 'freedom from restraint which . . . imposes *atypical and*

*significant hardship* on the inmate in relation to the ordinary incidents of prison

life.'" *See Porter*, 974 F.3d at 438 (quoting *Williams*, 848 F.3d at 559) (alteration

and emphasis in original)).

In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court

held that no liberty interest was implicated by an inmate's placement in solitary

confinement for thirty days as discipline for disruptive behavior.  515 U.S. at 487;

*see also Williams*, 848 F.3d at 559-60.  This holding was based on the Supreme

Court's conclusion that disciplinary solitary confinement "did not present the type

of atypical, significant deprivation in which a [s]tate might conceivably create a

liberty interest." *See Sandin*, 515 U.S. at 486.  A decade later, in *Wilkinson*, the

Supreme Court made "clear that the touchstone of the inquiry into the existence of

a protected, state-created liberty interest in avoiding restrictive conditions of

confinement is not the language of regulations regarding those conditions but the

nature of those conditions themselves 'in relation to the ordinary incidents of

prison life.'" *Id*. at 223 (quoting *Sandin*, 515 U.S. at 484).  Thus, in deciding

whether a protected, state-created liberty interest exists under *Sandin*, courts must

consider the following two factors: "(1) the duration of the challenged conditions;

and (2) whether the conditions overall imposed a significant hardship in relation to

the ordinary incidents of prison life." *See Williams*, 848 F.3d at 560 (citing *Shoats

v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)); *Mitchell*, 318 F.3d at 532 (stating that,

"[i]n deciding whether a protected liberty interest exists under *Sandin*, [courts are to] consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions" (citing *Shoats*, 213 F.3d at 144)).

Here, the court finds that Plaintiff has neither alleged nor shown that he was subjected to an atypical and significant hardship in relation to the ordinary incidents of prison life, such that he had a state-created liberty interest protected by the Due Process Clause of the Fourteenth Amendment.  Although Plaintiff alleges that he was placed in solitary confinement since he was transported to SCI-Mahanoy, this was not a single period for a single misconduct.  Instead, the record shows that Plaintiff's placement in the RHU was reviewed every thirty to ninety days, but he would incur a new misconduct at the end of each period for refusing to obey an order.  (Doc. 535-1, pp. 7–19 & Doc. 524-1, p. 10.)  He was then given an opportunity to file grievances regarding the misconducts.  This is evidenced by the sheer amount of grievances Plaintiff filed that were addressed by DOC staff. (Docs. 403-10, 403-11, 403-12, 403-13, 403-14.)

However, the issue of what happened to Plaintiff's medical equipment remains, and whether a taking of Plaintiff's property occurred without due process. Here, the record shows that Plaintiff needed a back brace, a right leg brace, and crutches as of February 23, 2007, while at the Albert Einstein Healthcare Network.

22

(Doc. 403-9, p. 3.)  However, all subsequent physician orders at state facilities do not address these braces: February 27, 2013, Doc. 403-3, p. 23; May 30, 2013, Doc. 403-3, p. 19; and June 21, 2016, Doc. 403-5, p. 52.  All that is available in the evidence are the stated need for the braces in 2007.  Plaintiff has failed to provide evidence that these braces were acquired by or given to him (i.e. were his own property) and not just prescribed by a provider at the Albert Einstein Healthcare Network for the duration of his stay at that facility.  Therefore, without evidence that Plaintiff was in possession of these braces prior to his return to a state facility, there is no evidence to support notion that Plaintiff's property was taken without due process under the Fourteenth Amendment.  Furthermore, there is evidence that Plaintiff did not have these braces at the state institutional facility he was housed at prior to SCI-Mahanoy as they were not prescribed in 2013, Doc. 403-3, p. 19, 23, and he was not transferred to SCI-Mahanoy until 2015.

For these reasons, the court will grant Defendants' motions for summary judgment in regards to the Fourteenth Amendment claims raised against the DOC Defendants.

### G. Defendants Will be Granted Judgment on Plaintiff's Remaining Claims Against the Medical Defendants

Defendants Khanum, CCS, and Keldie are collectively known as the Medical Defendants.  Plaintiff brings the same two remaining claims against these Medical Defendants: (1) Fourteenth and Eighth Amendment claims premised on

his solitary confinement in the RHU, Doc. 9. ¶ 30–31; and (2) an Eighth

Amendment claim premised on the assertion that the Commonwealth of

Pennsylvania's "treatment protocol, policy, provision, procedure and practice

presents deliberate indifference to the known risks from untreated chronic

hepatitis-c," violating the Eighth Amendment rights against cruel and unusual

punishment.  (Doc. 9, ¶ 33.)

### a.  Eighth Amendment Claims

Prison officials violate the Eighth Amendment when they act with deliberate

indifference to a prisoner's serious medical needs.  *See Estelle v. Gamble*, 429 U.S.

97, 104–05 (1976).  To sustain a constitutional claim under the Eighth Amendment

for inadequate medical treatment, a plaintiff must make (1) an objective showing

that his medical needs were serious, and (2) a subjective showing that the

defendants were deliberately indifferent to those medical needs.  *See Pearson v.*

*Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).  A serious medical need is

"one that has been diagnosed by a physician as requiring treatment or is so obvious

that a lay person would easily recognize the necessity for a doctor's attention."

*Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir.

1987) (citation omitted).  A prison official is deliberately indifferent when he

"knows of and disregards an excessive risk to inmate health or safety." *Farmer v.*

*Brennan*, 511 U.S. 825, 837 (1994).

### 1.  Claims Against Defendant Khanum

Plaintiff brings two Eighth Amendment Claims against Defendant Khanum: (1) premised on his denial of braces so he can ambulate effectively outside of solitary confinement in the RHU; and (2) premised on a refusal to treat his Hepatitis C.  (Doc. 9, ¶¶ 30–31, 33.)  Here, there is evidence that Plaintiff was prescribed the braces back in 2007 and was diagnosed with Hepatitis C.  (Doc. 403-9, p. 3 & Doc. 403-4, p. 23.)  Therefore, there is evidence to establish the first prong of an Eighth Amendment claim, i.e. a serious medical need.   However, Medical Defendants have presented evidence that Plaintiff repeatedly refused blood work and treatment for his Hepatitis C and specifically refused treatment from Defendant Khanum.  (Doc. 525-2, pp. 168, 185–86, 218–19, 221, 223.) Furthermore, Medical Defendants have provided evidence that they offered treatment for all of Plaintiff's other impairments.  (Doc. 525-2.)

The fact that Plaintiff disagrees with the treatment offered or refused that treatment does not create an Eighth Amendment claim.  *See White v. Napolen*, 897 F.2d 103, 110 (3d Cir. 1990) (It is a "well-established rule that mere disagreements over medical judgment do not state Eighth Amendment claims.").  Therefore, there is no evidence in the record to establish the second prong of the Eighth Amendment claim, i.e. that a prison official knew of and disregarded an excessive

risk to inmate health or safety.  As such, the court will grant Medical Defendants'

motion for summary judgment as to the Eighth Amendment claims.

### 2.  Claims Against Defendant CCS

Plaintiff brings an Eighth Amendment claim against Defendant CCS.  (Doc.

9, ¶ 31–33.)  In a § 1983 action, a private corporation contracted by a prison to

provide health care for inmates cannot be held liable on a *respondeat superior*

theory; rather, it can only be held liable for constitutional violations if it has a

custom or policy exhibiting deliberate indifference to a prisoner's serious medical

needs.  *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583–84 (3d

Cir. 2003).  Accordingly, to state a viable § 1983 claim against Defendant CCS,

Plaintiff is required to prove "that [it] had a policy, custom, or practice, and that

the policy, custom, or practice caused the constitutional violation at issue."  *See*

*Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting

*Natale*, 318 F.3d at 583).

Plaintiff's amended complaint challenges the Commonwealth of

Pennsylvania's "treatment protocol, policy, provision, procedure and practice

[because it] presents deliberate indifference to the known risks from untreated

chronic hepatitis-c," which he alleges to be a violation of the Eighth Amendment

prohibition against cruel and unusual punishment.  (Doc. 9, ¶ 33.)  If this claim is

read liberally as a challenge to the policy, procedure, and practice of CCS, it still

fails as Plaintiff has failed to set forth <u>any</u> policy, procedure, or practice of CCS, much less one that violates the Eighth Amendment.  He fails to provide any documentation of a state policy or an internal policy of CCS as it pertains to the treatment of his Hepatitis C.  Furthermore, the record demonstrates that Plaintiff routinely refused blood work and treatment for his Hepatitis C.  (Doc. 525-2, pp. 168, 185–86, 218–19, 221, 223.)

Therefore, Plaintiff cannot establish his treatment was denied or delayed by CCS or its policies.  As such, the court will grant the summary judgment claim as to the Eighth Amendment claim against Defendant CCS.

### 3.  Carl Keldie, M.D.

Defendant Keldie never treated Plaintiff.  He is the Chief Clinical Officer for Wellpath and works at its corporate headquarters in Nashville, Tennessee.  (Doc. 525-5, p. 1.)  Defendants allege that CCS is the former name for Wellpath.  (Doc. 532, p. 19.)  In an October 23, 2019 deposition, Plaintiff confirmed that Defendant Keldie never treated him.  He stated that he had never met Defendant Keldie, confirming he was in the lawsuit as his role as the "mind or the chief behind, Correct Care Solutions."  (Doc. 525-4, pp. 5–6.)  Therefore, Defendant Keldie does not have the personal involvement required under *Rode*.  For this reason, the court will grant Defendant's motion for summary judgment for all Eighth Amendment claims raised against Defendant Keldie.

### H. Fourteenth Amendment Claims

Plaintiff brings a Fourteenth Amendment claim against the Medical Defendants.  (Doc. 9, ¶ 31–32.)  As discussed above, to establish a claim under the Fourteenth Amendment, a plaintiff must demonstrate that he was deprived of a protected interest in life, liberty, or property.  However, Plaintiff has failed to articulate what interest Medical Defendants allegedly deprived.  As noted above, if the complaint is liberally construed as a deprivation of his braces and crutches, there is no evidence these braces were in Plaintiff's possession when he arrived at SCI-Mahanoy.  Furthermore, to the extent that Plaintiff is attempting to use the Fourteenth Amendment as a vehicle to assert a violation of his Eighth Amendment rights, such an assertion would be duplicative of his Eighth Amendment claim, which has been addressed above.  *See Ramos v. Prime Care Medical*, No. 19-3816, 2019 WL 6839943 at *3 (M.D. Pa. Dec. 13, 2019).  As such, the court will grant Medical Defendants' motion for summary judgment as to the Fourteenth Amendment claims.

### I.  Motion for Protective Order Will be Denied

Plaintiff has also filed a motion for a protective order addressing his current treatment at SCI-Coal Township and requesting sanctions.  (Docs. 513, 514.)  The case at hand is concerned with the treatment Plaintiff received a SCI-Mahanoy.  Therefore, this motion will be denied.

**CONCLUSION**

Based on the foregoing, the court will grant Defendants' motions for summary judgment, Docs. 521, 525, deny Plaintiff's motion for summary judgment, Doc. 403, deny Plaintiff's motion for a protective order, Doc. 513, and enter judgment in favor of Defendants.  The Clerk of the Court will be directed to close this case.

An appropriate order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: September 22, 2022